FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

00 AUG 31 AM 9: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PATRICIA SCHMITT, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-99-N-2819-W |
| PROVIDENT LIFE & ACCIDENT INSURANCE CO., | ] |
| Defendant(s). | ] |

ENTERED
AUG 3 1 2000

**Memorandum of Opinion**

## I. Introduction

In this action, plaintiff, Patricia Schmitt, brings suit against Provident Life & Accident Insurance Company ("Provident") for allegedly violating the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B) by denying her long term disability benefits. This action is before the court on Provident's motion for summary judgment that was filed on July 3, 2000 [Document 37]. The motion has been adequately briefed by the parties and, upon due consideration, will be denied.

## II. Statement of Facts[1]

From June of 1988 until December of 1996, Mrs. Schmitt was employed by Alabama Power Company ("APCo"). During the course of her employment with APCo, Mrs. Schmitt participated in a group long term disability insurance plan issued through, and

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).



administered by, Provident. In December of 1996, Schmitt allegedly injured her back as a result of a slip/fall accident. On October 16, 1997, Mrs. Schmitt filed a disability claim with both Provident and the Social Security Administration ("SSA"). Prior to filing her disability claims, APCo offered to provide Mrs. Schmitt work accommodations but, presumably due to pain, she tendered APCo her resignation.

In making its initial benefits determination, Provident's plan administrator primarily considered the medical opinions of Dr. Robert Craddock and Dr. Moses Jones. Dr. Jones, performing an independent medical examination for APCo, concluded that Mrs. Schmitt has a partial physical impairment of 10% to the body as a whole and no restrictions on her level of activity. However, Mrs. Schmitt's treating physician, Dr. Craddock, reached a different conclusion. In short, Dr. Craddock opined that, as a result of her accident, Mrs. Schmitt was permanently disabled and would "never" be able to return to her employment with APCo or "any other employment." However, in the "work capacity" portion of Provident's "Attending Physician Form," Dr. Craddock indicated that Mrs. Schmitt could perform "Sedentary work (10 lbs. Lifting maximum)." (Defendant's Motion for Summary Judgment, Exhibit B, Part 2). Additionally, as part of their investigation, the plan administrator obtained a GENEX Services nurse, Mae Wingett, to conduct a home interview with Mrs. Schmitt. Mrs. Wingett observed Mrs. Schmitt's demeanor during the visit and noted that, while she did "very little fidgeting" of her body during the consultation, Mrs. Schmitt "became teary eyed several times during our conversation." (Defendant's Motion for Summary Judgment, Exhibit B, Part 4).

Based on the foregoing medical evidence, Provident determined that Mrs. Schmitt was not "disabled" within the meaning of Provident's long term disability plan because she retained the residual capacity to perform sedentary work. Therefore, by letter dated May 5, 1998, Mrs. Schmitt's claim for long term disability benefits was denied. On July 13, 1998, Mrs. Schmitt requested that Provident reconsider its initial determination. In further support of her disability claim, Mrs. Schmitt attached the medical opinion of Dr. David Cosgrove, a second attending physician. Dr. Cosgrove described Mrs. Schmitt's condition as "degenerative disc disease" and "nerve root compression syndrome." He concluded that Mrs. Schmitt was not a candidate for rehabilitation, could not return to regular employment even with accommodations, and was precluded from all work "even at a sedentary level." (Defendant's Motion for Summary Judgment, Exhibit B, Part 3). After the Provident appeals committee reviewed the initial claim as well as the additional information provided by Dr. Cosgrove, the committee once again determined that Mrs. Schmitt was not disabled within the meaning of Provident's policy. In support of its determination, the appeals committee cited the 10% partial physical impairment rating given by Dr. Jones. (Defenant's Motion for Summary Judgment, Exhibit B, Part 6).

After exhausting the administrative remedies provided to her by Provident, Mrs. Schmitt brought this suit in federal court alleging Provident violated the mandates of ERISA in denying her long term disability benefits. In its motion for summary judgment, Provident argues that, considering the evidence before Provident at the time of the benefits decision was made, the decision cannot be said to have been arbitrary and capricious. (Defendant's Motion for Summary Judgment, p. 7).

## III.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits;

4

responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from

the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Standard for Reviewing Fiduciary Decisions

In determining whether Provident's motion for summary judgment should be granted as to its denial of Mrs. Schmitt's long term disability claim, Provident's decision "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." *Firestone Tire and Rubber Co. v. Burch*, 489 U.S. 101 (1989). If the administrator or fiduciary is given discretionary powers under the plan, his or her decisions are reviewed for an abuse of discretion and will not be disturbed if those decisions are reasonable. However, when an administrator with discretion is operating under a conflict of interest such that its decision to deny or award benefits impacts its own financial interests, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Burch*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, cmt. d (1959)); *see also Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997) (providing that heightened scrutiny applies where a "plan beneficiary demonstrates a substantial conflict of interest on the part of the beneficiary responsible for benefits determinations"); *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556, 1561 (11th Cir. 1990), *cert. denied*, 111 S. Ct. 712 (1991) ("a strong conflict of interest exists when

the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims").

In the present matter, both parties are in agreement that the disability plan at issue gives the plan administrator, Provident, discretionary authority to determine eligibility for benefits. Mrs. Schmitt argues, however, that the less deferential standard should apply because Provident, acting as both administrator and insurer, was acting under a conflict of interest when it made its benefit determination. (Plaintiff's Opposition to Summary Judgment, p. 4). In other words, if Provident denies disability benefits to its members, it enjoys a direct pecuniary gain in the form of expenses avoided. The court finds merit in Mrs. Schmitt's argument. For this reason, while the court must still review Provident's denial of benefits under the arbitrary and capricious standard, the deference given to Provident's decision may be less than in instances where no conflict exists. *Buckley*, 115 F.3d at 939; *see also Anderson v. Blue Cross and Blue Shield of Alabama*, 907 F.2d 1072 (11th Cir. 1990).

### B. Consideration of "New" Evidence

In addition to shaping the discretion that the district court is to afford the plan administrator's benefits decision, the standard of review is also important because it determines whether the court may consider evidence that was not initially presented to the plan administrator. When applying the arbitrary and capricious standard, as in the present case, the court is required "to determine whether there was a reasonable basis for [Provident's] decision, based upon facts known to the administrator at the time the decision was made." *Jett v. Blue Cross and Blue Shield of Alabama Inc.*, 890 F.2d 1137, 1139 (11th

Cir. 1989). The rationale for this proposition is best stated by the Sixth Circuit's decision in *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990), providing that:

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. If district courts hear evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.

*See also Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992); *Oldenburger v. Central States Pension Fund*, 934 F.2d 171, 174 (8th Cir. 1991); *compare Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir. 1989) (concluding that limiting a district court conducting *de novo* review to the facts available to the plan administrator at the time of the decision was "contrary to the concept of a de novo review").

In the present matter, Mrs. Schmitt's counsel urges this court to consider additional evidence[2] in determining whether Provident's plan administrator acted arbitrarily and capriciously in denying her disability benefits. The "additional" evidence, in pertinent part, consists of: (1) Mrs. Schmitt's own affidavit in which she alleges that the independent medical examination performed by Dr. Jones lasted three to five minutes; (2) the affidavit of Dr. Craddock, her treating physician, stating that he erroneously marked the box indicated Schmitt had a sedentary work capacity; and (3) records from the Social Security Administration ("SSA") indicating that Schmitt had been awarded disability benefits from

---

[2] The additional evidence that counsel urges this court to consider was first submitted in Schmitt's responsive motion in opposition to summary judgment, filed July 28, 2000 [Doc. No. 44].

the Social Security Administration. (Plaintiff's Opposition to Summary Judgment, Exhibits A - D). However, because Mrs. Schmitt failed to, or was incapable of, properly bringing this additional evidence to the attention of Provident, her additional affidavits and submissions will not be considered in determining whether Provident's plan administrator acted arbitrarily and capriciously in denying her disability benefits.

### C.     **The Denial of Benefits**

With the foregoing principles in mind, the remaining issue to be decided is whether Provident's decision to deny Mrs. Schmitt long term disability benefits was arbitrary and capricious. According to *Jett*, in order to avoid being found arbitrary and capricious, the plan administrator's decision must be supported by substantial evidence. 890 F.2d 1138-39. The Supreme Court has defined "substantial evidence" as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

On May 15, 1998, Provident informed Mrs. Schmitt that, based on Provident's definition of "disability,"[3] her claim for long term disability benefits had been denied. As

---

[3]     Provident's Group Long Term Disability Policy defines "disabled" as follows:

OWN OCCUPATION DISABILITY DEFINITION
During the Own Occupation period, Covered Persons are Disabled from their own occupation if due to their Sickness or Injury they:
  1.  are unable to earn at least the Own Occupation
      Income Level; or
  2.  are unable to perform each of the material duties
      of the occupation that they regularly perform for the
      Employer . . .

ANY OCCUPATION DISABILITY DEFINITION
During the Any Occupation Period, Covered Persons are Disabled for Any Occupation for which they:
  1.  are unable to earn at least the Any Occupation

required by section 503 of ERISA, Provident informed Mrs. Schmitt that, in making its determination, it had relied upon the medical opinions of Dr. Jones and Dr. Craddock. In pertinent part, Provident's denial letter informed Mrs. Schmitt that:

> Medical information received from Dr. Robert Q. Craddock indicates a work capacity of sedentary work with a 10 pound lifting maximum. Additionally, an MRI was performed by Dr. Jones on September 16, 1997. As indicated on the MRI, Dr. Jones states 'I feel that she has a partial physical impairment of 10% to the body as a whole. I feel she has no restrictions of level of her activity and can see no reason why she cannot resume her daily activities.' Additionally, he states 'I have reviewed the patient's cervical and lumbar myelogram which show [sic] evidence of cervical spondylosis, but nothing to explain the patient's lumbar pain.

(Defendant's Motion for Summary Judgment, Exhibit B, Part 5). As discussed below, viewing the evidence in a light most favorable to Mrs. Schmitt, the court finds that Provident's denial of long term disability benefits is not supported by substantial evidence.

Dr. Jones, an "independent" medical examiner selected by Mrs. Schmitt's employer, APCo, provided Provident with a two page, single spaced report detailing his examination and assessment of Mrs. Schmitt. After summarizing Mrs. Schmitt's past medical, family, and social history, Dr. Jones simply concluded that Mrs. Schmitt had a 10% partial physical impairment with "no restrictions of level of her activity" or her "daily activities." (Defendant's Motion for Summary Judgment, Exhibit B, Part 1). Noticeably absent from Dr. Jones' report, however, is an explanation of what he considered to be the "level of [Mrs.

---

2. Income Level while working in any occupation; or are unable to perform each of the material duties of any occupation for which they are reasonably fitted by education, training, or experience.

(Defendant's Motion for Summary Judgment, Exhibit C, p. 9).

11

Schmitt's] activity" or her "daily activities." In fact, there is no indication that Dr. Jones was even familiar with the position that Mrs. Schmitt held at APCo or that her job was sedentary in nature. For this reason, it is very difficult to draw a useful connection between Dr. Jones' evaluation of Mrs. Schmitt's impairments and Provident's definition of disability.

In addition to the scant report submitted by Dr. Jones, Provident's reliance on selective portions of Dr. Craddock's medical opinion is highly questionable. Pursuant to Provident's claims policy, Dr. Craddock, Mrs. Schmitt's treating physician, filled out a standard form entitled "Attending Physician's Statement of Disability." This standard disability form, provided by Provident, requires the attending physician to answer specific questions related to the claimant's purported disability. Moreover, presumably to aid the plan administrator making claims decisions, the questions posed to the physician are directly related to Provident's definition of "disability."[4] Dr. Craddock diagnosed Mrs. Schmitt with a herniated disk and severe lower back and leg pain. Dr. Craddock additionally noted that: (1) Mrs. Schmitt's progress was unimproved; (2) she was disabled from her occupation as well as any other work; (3) she would "never" be able to work again; and (4) her range of motion was severely impaired and she could not return to her previous work, or any other work, even with the aid of rehabilitation or accommodations. (Defendant's Motion for Summary Judgment, Exhibit B, Part 2). Despite the numerous instances in which Dr. Craddock indicated Mrs. Schmitt to be totally disabled, however, in

---

[4] Provident's standard form, entitled "Attending Physician's Statement of Disability," asks the treating physician to respond to specific questions, such as: (1) Diagnosis, (2) Treatment, (3) Progress, (4) Extent of Disability (current occupation or any other work), (5) Work capacity, (6) Range of motion, and (7) Potential success of rehabilitation. (Defendant's Motion for Summary Judgment, Exhibit B, Part 2).

12

response to category eight of the standard form (labeled "Work capacity"), Dr. Craddock checked the box indicating that Mrs. Schmitt was capable of "Sedentary work (10 lbs. lifting maximum)." *Id*.

As indicated by its denial letter of May 15, 1998, Provident's plan administrator relied very heavily on category eight of Dr. Craddock's evaluation in denying Mrs. Schmitt disability benefits. (Defendant's Motion for Summary Judgment, Exhibit B, Part 5). Given the fact that, aside from category eight, the only evidence before Provident's plan administrator at the time of the initial disability decision was the scant medical opinion of Dr. Jones and the observations of a GENEX Services nurse, Provident was certainly obligated to clarify Dr. Craddock's evaluation before making an eligibility determination. *See Jett*, 890 F.2d at 1141 (Johnson, J. concurring).

On September 14, 1998, Mrs. Schmitt moved Provident to reconsider its determination that she was not disabled within the meaning of the Provident plan. In addition to attaching Provident's standard attending physician's form, in which Dr. Cosgrove, a second treating physician, concluded that Mrs. Schmitt was disabled from all work "even at a sedentary level," Schmitt attached eight pages of procedural notes addressing a series of epidural steroid injections prescribed by Dr. Cosgrove in order to alleviate pain. (Defendant's Motion for Summary Judgment, Exhibit D, Parts 3-6). While Dr. Cosgrove's notes indicate that, pursuant to his advice, Mrs. Schmitt increased her daily activities after receiving the injections, the court finds that Mrs. Schmitt's increased activities are not necessarily inconsistent with Dr. Cosgrove's unequivocal diagnosis of total disability. None of the evidence to which Provident's counsel refers, i.e., the ability to ride

in a boat or car for an extended period of time after receiving injections, is evidence of Schmitt's ability to "peform each of the material duties of the occupation that . . . [she] regularly perform[s] for the Employer." (Defendant's Motion for Summary Judgment, Exhibit D, Parts 3-6; Exhibit D, p. 9). In its decision to uphold the initial denial, Provident simply stated that, "[a]s previously indicated the MRI performed by Dr. Jones on September 16, 1997 revealed a partial physical impairment of 10% to the body as a whole . . . [h]e further stated 'I feel she has no restrictions of level of her activity and can see no reason she cannot resume her normal activities.'" (Defendant's Motion for Summary Judgment, Exhibit B, Part 6).

    For the foregoing reasons, the court concludes that the medical conclusions drawn by Dr. Jones, along with one portion of Dr. Craddock's evaluation, simply provide little evidentiary support for Provident's determination that Schmitt was not disabled within the meaning of Provident's long term benefits policy. Therefore, because a genuine issue of material fact exists as to whether Mrs. Schmitt was "disabled" at the time of her resignation from APCo, Provident's motion for summary judgment will be denied. Moreover, since Provident's decision, additional evidence as to the existence of a disability has been developed (Plaintiff's Opposition to Summary Judgment, Exhibits A - D). A subsequent benefit determination, however, should first be made by the plan administrator and not by the district court. See *Jett*, 890 F.2d at 1139, quoting *Wardle v. Central States, Southeast and Southwest Areas Pension Funds*, 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112 (1981) ("[a]s a general matter a court should not resolve the eligibility question on the basis of evidence never presented to [an ERISA plan's administrator] but should

remand to the [administrator] for a new determination"). Accordingly, this case will be remanded to the Provident plan administrator with instructions to review the evidence that has been developed since the original denial and to make a new benefit determination. *see Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (district court did not err in directing plan administrator to consider subsequently available evidence where plan administrator failed to make reasonably relevant inquiry at the time of the original determination).

**V.     Conclusion**

Since Provident, as both plan administrator and insurer, was acting under a conflict of interest when it made its benefits decision, this court applies a heightened arbitrary and capricious standard in reviewing Provident's denial of benefits. In applying this standard, the additional evidence presented by Mrs. Schmitt in her responsive motion cannot be taken into consideration. Nevertheless, Provident's decision to deny Mrs. Schmitt disability benefits, a decision mainly based upon the conclusions of Dr. Jones and one portion of Dr. Craddock's evaluation, is simply not supported by substantial evidence. For this reason, Provident's motion for summary judgment is hereby **DENIED** and this action will be remanded to Provident's plan administrator with instructions to consider subsequently available evidence.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __30th__ of August, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

16